## WAUKESHA MOTOR CO. v. WILLYS-OVERLAND, Inc.

### No. 6647.

Circuit Court of Appeals, Sixth Circuit.

June 5, 1935.

Arthur H. Boettcher, of Chicago, Ill. (and Brown, Jackson, Boettcher & Dienner, of Chicago, Ill., and Marshall, Melhorn, Marlar & Martin, of Toledo, Ohio, on the brief), for appellant.

Charles Neave, of New York City (J. L. Stackpole and H. L. Kirkpatrick, both of Boston, Mass., and Braselton, Whitcomb & Davies, of Toledo, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

In a suit brought by the appellant as plaintiff below for infringement of Ricardo patent No. 1,474,003, for an internal combustion engine, the District Court found no infringement in the defendant's accused engine, made no decision as to patent validity, and dismissed the bill. The plaintiff appeals.

The patent relates to internal combustion engines of the four-cycle constant volume type, operating on the so-called Otto principle, which have the valves placed in side pockets adjacent the cylinder. It relates also to a type known as L-head engines, because in their earliest form the cylinder and combustion chamber represented an inverted L. Understanding of the nature of the invention necessitates a brief exposition of principles of operation and description of construction detail.

In an engine operating on the Otto principle, the combustion mixture is formed outside the engine's cylinder, is then drawn into it by suction, and, while under compression, is ignited by an electric spark. It is the expansion of the gases upon combustion which drives the mechanism. The four-cycle type is one in which the piston makes four strokes, or two complete reciprocations, in each cycle of operation. Of the four strokes, the first is downward, a suction or intake stroke, which draws the fuel into the cylinder through the open intake valve; the second is an upward compression stroke, which, made with the valves closed, compresses the combustible mixture in the cylinder head. The downward power stroke follows, and the upward exhaust or scavenging stroke, which expels the burned gases through the open exhaust valve, completes the cycle. The top or cover of the cylinder is called the head, and here is located the combustion chamber. In the L-head type of engine the inlet and exhaust valves are disposed side by side in the same pocket, and open upwardly into the combustion chamber. Heads are sometimes made integral with the cylinder, and sometimes separable. Viewed from above in horizontal cross-sec-

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

tion, the cylinder and the two valves for each combustion chamber are disposed in triangular relation. Of prime importance in designing engines of this type is the compression ratio, which is the ratio of the volume of the space over the piston with the valve closed and the piston at bottom dead center, to its volume with the valves closed and the piston at top dead center. Important also in the combustion chamber is the ratio of surface area to the volume of gas, a low surface ratio permitting the most desirable compression ratio, and reducing the tendency to detonation or "knocking"; a spherical combustion chamber being in consequence the ideal aimed at, though never for practical reasons achieved.

The faults which Ricardo claims to have noted in prior art engines resulted from the utilization therein of shallow combustion chambers. The ratio of surface to volume in such chambers was unduly large. The turbulence created therein by the entry of gas at high velocity so essential in producing a rapid spread of flame upon combustion, and at the same time preventing isolation and subsequent detonation of a portion of the charge, was too speedily damped out by skin friction, with the result that a layer of gas remained in contact with the walls of the combustion chamber too stagnant and chilled to burn completely upon ignition. To overcome these difficulties and achieve a more violent turbulence, Ricardo disposed the major portion of his combustion space over the inlet and outlet valves, with a port or passage having substantially the same area as the inlet valve port serving as a communication between this combustion space and the end or bore of the cylinder. "By employing this construction," he asserts, "not only is the area of the combustion chamber greatly reduced for a given volume, but at the same time violent turbulence is set up in the combustion chamber throughout the compression stroke and immediately before ignition occurs as the result of the passage of the gases from the cylinder through the somewhat restricted port communicating with the combustion chamber." The latter is formed by a recess in the flat head of the cylinder, the greater part of the recess lying over the valves, but a portion of the recess extending into and overlapping part of the cylinder. The remaining portion of the cylinder bore is substantially closed. Mechanical reasons prevent complete closure, but the inventor states that, while clearance is imperative, he makes such clearance the minimum which must be provided on purely mechanical grounds. This clearance, however, involves the formation of a thin layer of more or less stagnant gas entrapped between the cylinder head and the piston, but so chilled that it does not burn completely, and, while it is therefore partially lost from a thermodynamic standpoint, for the same reason it cannot detonate. He claims for his cylinder, having a combustion chamber thus formed, greater power and economy, with the advantage of a much higher compression ratio without a tendency to detonation.

Of the five claims allowed to Ricardo, claim 4 alone is in issue. This claim is for a combination, and for the sake of clearness we number and paragraph its elements:

"4. In an L-head internal combustion engine,

"(1) A cylinder block having a cylinder bore therein,

"(2) A piston reciprocating in said cylinder,

"(3) Combustible gas inlet and burned gas outlet passages formed in said block and terminating adjacent the end of said bore,

"(4) A head lying over said bore and said inlet and outlet passages,

"(5) Said head having a recess formed therein and lying over said inlet and outlet passages and over a portion only of said bore,

"(6) Whereby said recess communicates restrictedly with the end of said cylinder,

"(7) The end of said cylinder being otherwise permanently closed,

"(8) Said recess being otherwise closed,

"(9) Said recess representing all of the effective combustion space when the piston is in the position of greatest compression,

"(10) Valves for said inlet and outlet passages, and

"(11) Spark ignition means for said combustion chamber."

The defendant claimed and the court below held the restricted throat or communicating passage between the combustion chamber and the cylinder, described in the specification and therein limited to a cross-sectional area, approximately the same as that of the inlet valve port, to be an essential element of the Ricardo inven-

908

tion, and that the defendant's accused Whippet engine, having a throat approximately twice that of its inlet valve port, and therefore omitting one of the essential features of the patented combination, did not infringe. This was in response to our decisions in Vanderveld v. Rollman & Sons Co. (C. C. A.) 28 F.(2d) 948; Detroit Showcase Co. v. Kawneer Mfg. Co. (C. C. A.) 250 F. 234; Russell Grader Mfg. Co. v. F. B. Zeig Mfg. Co. (C. C. A.) 259 F. 575; Kinzel v. Luttrell Brick Co. (C. C. A.) 67 F. 926. This holding is challenged as a misreading and misconstruction of both the claim and the specification, and requires on our part a careful analysis of both.

■ The word "restrictedly," as used in element 6 of the claim, is, of course, one of relative rather than of absolute meaning, and upon familiar principles resort may be had to the drawings and specification, not to expand or limit the claim, but to ascertain its true meaning. Inquiry must be directed, to the purpose, manner, and extent of the restriction upon the communication between the recess and the end of the cylinder. At one point in the specification the inventor says: "A valve pocket or space is situated at one side of the cylinder bore, and is formed so as to constitute the combustion space or the major portion thereof, and a port or passage which has substantially the same area as the inlet valve port serves as a communication between this combustion space and the end or bore of the cylinder." Again he says: "The cross sectional area of this communicating passage is substantially the same as that of the inlet valve port, and the end of this passage, or a part of the recess, may be said to overlap the bore of the cylinder." At still another point in the specification is the following: "The overlapping portion constitutes a port or passage whose area is approximately equal to that of the inlet port controlled by the valve B'."

It is the appellant's contention that the port or passage referred to in the specification denotes that portion of the recess which overlaps the cylinder bore, and, while the cross-sectional area of this passage is described as substantially the same as that of the inlet valve port, that it is not the restricted communication between recess and cylinder of the "whereby" clause (element 6) of the claim in issue. In other words, the recess includes both elements, combustion chamber and communicating passage, so that, when the claim speaks of communication restrictedly between recess and cylinder, it refers, not to the passage in the recess, but to a restriction which results from the partial closure of the cylinder by the unrecessed portion of the head. The restricted communication is therefore the port between the end of that part of the recess overlapping the cylinder and the cylinder bore, which is restricted only to the planar area of the overlap of the recess. Neither the claim nor specification contains any limitation upon this planar area, and the cylinder bore of the accused device, being partly closed as in the patent, responds to the claim and so infringes.

The argument is ingenious but not convincing. The inventor conceived of his valve pocket, or the space in the head at one side of the cylinder bore, as his combustion space, or the major portion thereof. Between this and the bore of the cylinder he designed a restricted port or passage. It was a communicating passage, and its purpose was to secure, not merely turbulence in the combustion chamber immediately before ignition, but violent turbulence. While the specification is silent as to the reason for the limitation upon the area of the communicating passage, it is clear from the evidence of the appellant's expert that the limit of permissible restriction must be the area of the intake valve port, in order not to impair the volumetric efficiency of the cylinder. To have constricted the passage to an area less than that of the intake valve port would have impeded the flow of combustible mixture into the cylinder upon the intake stroke, or, as it has been aptly put, impaired the capacity of the cylinder "to breathe." It may be inferred that otherwise an even greater restriction, achieving still more violent turbulence, might have been thought expedient.

It seems to us clear that the restricted communication thought so desirable by the inventor was that provided by that portion of the recess described as the port or passage; that, while any partial closure of the cylinder bore is in a sense a restricted communication, that that is not what the inventor thought to be the nub of his invention. This is demonstrated by the story told by the file wrapper of the stormy journey of the patent through the Patent Office. Claims were repeatedly rejected on prior art references, and had either to be amended or withdrawn and substituted by

new claims. When original claims 1 to 5 were rejected, the inventor argued to the Examiner: "In claim 2, in addition to similar limitations, it is expressly brought out that the port connecting the cylinder and recess has a cross sectional area approximately the same as that of the inlet port. This is a novel feature of applicant's invention so far as the references show, and as it is of great importance, the claims drawn thereto should be allowed." It will be noted that the inventor refers to the port as connecting the cylinder and recess, and not as connecting the cylinder and combustion chamber, and that this port, which has a cross-sectional area approximately the same as that of the inlet port, is the novel and important feature of the invention. Clearly, the inventor in referring to his communication between recess and cylinder had in mind the port or passage (the throat) between the combustion space, or the main portion thereof, and the cylinder, rather than a planar opening between recess (interpreting recess as the space including the throat) and the cylinder—else why insist on the limitation of its area and stress its novelty and importance? Certainly the measure of a communication as restricted is its smallest cross-sectional area, and, function considered, it is not conceivable that the wider and less restricted end of a restricted passage should be claimed, and its narrower throat ignored, when the desired violent turbulence is achieved by the latter with little, if any, aid from the former.

■ We are constrained to hold, as did the court below, that the restricted communication of the claim is the restricted communication between the combustion space or major portion thereof and the cylinder bore as described in the specification and as there limited, and we are in accord with the reasoning of the District Judge that, if any other interpretation were adopted, serious doubt might be cast upon the validity of the patent, not only upon the ground that the inventor failed to comply with Rev. St. § 4888 (35 USCA § 33), which requires a patentee to particularly point out and distinctly claim that which he considers his invention or discovery, Permutit Co. v. Graver Corp., 284 U. S. 52, 52 S. Ct. 53, 76 L. Ed. 163, but also in the light of the prior art, as exemplified by the Continental Liberty engine and the National engine, not cited in the Patent Office. It is quite true that in claim 2 of the patent there is apparently a limitation upon the maximum, but none upon the minimum, restriction of the communication between cylinder and combustion chamber, and that claim 5 has somewhat similar recitals. Claims 2 and 5 are not, however, in issue, and perhaps designedly so in view of the record evidence of the prior art. It must be noted, however, that the communication referred to, both in claim 2 and in claim 5, is the communication between the combustion chamber and the cylinder, and *not that between recess and cylinder.*

■ Having reached the conclusion that the court below was right in its finding of noninfringement on the ground that the defendant does not use one of the essential features of the claimed combination, and that this is controlling on that issue, it becomes *unnecessary to consider other questions* in the case.

The decree below is affirmed.