### PERFECT CIRCLE CO. v. HASTINGS MFG. CO.

#### No. 7115.

Circuit Court of Appeals, Sixth Circuit.

March 4, 1937.

Frank Parker Davis and Harry W. Lindsey, Jr., both of Chicago, Ill. (Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., on the brief), for appellant.

Otis A. Earl, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich., and Charles S. Burton, of Chicago, Ill., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant complains of a decree, holding invalid for want of invention Teetor patent No. 1,414,796, issued May 2, 1922, for improvement in engines. .

The Teetor patent is for a combination in an engine, with the cylinder thereof of a hollow piston having a circumferential groove and a packing ring within the groove. The combination of three such elements is, of course, old. The reciprocating piston within a hollow cylinder for the compression of steam or explosive gases was the conventional assembly in steam and internal combustion engines of the four-stroke type described by us in Waukesha Motor Co. v. Willys-Overland, Inc., 77 F.(2d) 906. Also conventional in such combination was the piston ring seated in a circumferential groove of the piston. Its primary function in both steam and gas engines is to act as a packing between the cylinder wall and the reciprocating piston, and so it is variously referred to in prior art patents as "piston ring," "piston packing," and "metallic piston packing." In internal combustion engines, it also acts as an oil regulating device. While it must prevent excess oil from passing above it to the combustion space as the piston reciprocates, it also functions to spread lubrication evenly over the wall of the cylinder, and to dispose of excess oil, for it must be understood that oil is supplied to the cylinder by the centrifugal throw of the lower end of the connecting rod as it dips into the crank case, whereby one side of the cylinder receives more oil than the other.

Teetor discloses no departure from prior art in the cylinder, nor substantially in the piston, nor in the manner of their co-operation. His improvement is mainly confined to the configuration of the piston ring. The court below, conceding without deciding that his improvement in the ring was patentable, concluded that there was no invention in placing the improved device into a combination in an engine with a cylinder and piston, for such combination was well known and the environment necessary to any practical use of the invention. Finding no claim in the patent directed to a piston ring, and no invention in the combination, it dismissed the bill, principally upon the authority of our decision in Kodel Electric & Mfg. Co. v. Warren Telechron Clock Co., 62 F.(2d) 692, 694, wherein it was said:

"If a later invention consists solely of the improvement of one of the devices theretofore forming a part of an old combination, which improvement enables that device to perform its separate function in a more efficient and useful manner, and thereby produces a better result in the operation of the whole or broader combination, but does this without change in mode of operation of that combination, the patentee of the improvement may have a patent which will cover his improvement; but he may not claim the broader combination, merely substituting his improved device for the means theretofore used to perform the same function although less perfectly, for the concept of this combination of means, regarded as a unit, was not his, and it was not new."

To which, of course, might be added what was said by the Second Circuit Court of Appeals in the Selden Patent Case (Columbia Motor Car Co. v. Duerr & Co.), 184 F. 893, at page 907: "Selden did not, however, obtain a patent for his improvement upon the Brayton engine, but made the improved engine an element in his road locomotive combination. But no new co-ordinate action of the mem-

bers of the combination is shown. The improved engine furnished the power, and the other elements co-operated with it in the same way that similar elements had co-operated with the older engines. The superior results would seem to have arisen from the superiority of the engine element alone."

But whether we should view Teetor's invention as one limited to the improvement of a single element without changing its co-operative relation to other elements, and so hold his claims invalid as too broad, or to conclude as did the court in the Selden Case that "it is sufficient to sustain the claim to hold that the combination embraced a novel element," it seems to us unnecessary to decide. This distinction at least between the instant case and the Kodel Case must be noted: The present plaintiff did not by its suit seek to extend the monopoly of its patent to unpatented or unpatentable elements of the combination. Neither plaintiff nor defendant manufactures engines or any combination of pistons, piston rings, and cylinders. Both are manufacturers of piston rings alone, the plaintiff for original installation and replacement and the defendant but for replacement. No question of infringement, direct or contributory, by other elements supplied to the patented combination here arises, and there may be no application of the doctrine of implied license which formed the additional ground for decision in the Kodel Case.

Whether we view Teetor's concept as embracing a new combination because of a novel element therein, or more narrowly as confined to improvement in a single element of an old and exhausted combination, the presence of invention in the patent disclosure must be determined by identical criteria, for clearly there can be no invention in the placing of a piston ring into co-operation with piston and cylinder whatsoever may be the improved result obtained. Utility is neither indicated nor suggested in other environments, and there being neither novelty nor invention in the conventional combination, the inventive concept

must be discovered if at all in the improvement made by Teetor in the single element of the patented combination. Teetor was allowed four claims, of which claim 1, printed in the margin[1] is typical. All of them recite that they are for the combination in an engine of (1) the cylinder, (2) a hollow piston having a circumferential groove therein, and (3) a packing ring within the groove. These elements being old, we are concerned only with the structure and configuration of the packing ring. This is formed with (a) an exterior annular channel in a zone between the flat spaces of the ring, (b) elongated, outwardly diverging slots in the zone of the channel and opening upon the inner cylindrical surface of the ring, (c) the elongated slots establishing communication between the annular channel and the interior of the ring, and (d) being narrower than the channel, and (e) the piston having holes establishing communication between its interior and the circumferential groove.

Much importance was assigned in evidence and argument to the annular channel in the outer cylindrical side of the ring facing toward the cylinder. It serves, it is asserted, as a peripheral passage for the flow of lubricant to be distributed uniformly over the inner wall of the cylinder. It also, it is said, gives the ring two contacts on the bore of the cylinder, thus more efficiently maintaining the spread of oil film and avoiding wear which the rocking piston imposes upon the sharp edges of a single contact ring. The elongated slots in a zone of the channel, formed with outwardly diverging ends, permit, it is said, a maximum efficiency of oil flow within the channel, and communicating with holes in the piston are well adapted for drainage, since they permit the return of excess oil to the crank case.

That Teetor designed a highly useful piston ring for internal combustion engines is beyond controversy upon this record. Whether his claims disclose patentable novelty over the prior art, or denote invention, is, however, another question. Teetor pays frank tribute to the Leigh-

[1] In an engine, the combination with the cylinder thereof; of a hollow piston having a circumferential groove therein; and a packing ring within the groove, said packing ring being formed with an exterior annular channel in a zone between the flat faces of the ring, and elongated outwardly diverging slots in the zone of the channel and opening upon the inner cylindrical surface of the ring, the elongated slots establishing communication between said annular channel and the interior of the ring and being narrower than the channel, said piston having holes establishing communication between its interior and its aforesaid circumferential groove.

ton.patent, 953,672, issued March 29, 1910. In that patent, he says, "There was disclosed an engine cylinder, a piston reciprocating therein and having grooves for the reception of piston rings, packing rings fitting within the said grooves and fitting them rather loosely, each ring being provided in its outer cylindrical side with an annular channel facing toward the cylinder and formed with perforations through its body leading from the annular channel in the piston ring to the inner cylindrical surface of the ring." Teetor describes his improvement upon Leighton thus: "The piston ring of my invention possesses the annular channel in its outer cylindrical side and in place of the small perforations that establish communication between this channel and the inner cylindrical surface of the ring I provide elongated slots in the zone of the annular channel. While these elongated slots serve to establish communication between the corresponding piston ring channel and the holes in the piston for the purpose of returning lubricant to the crank case of the engine, they reduce the trapping of the lubricant in the piston groove both at the outer and inner cylindrical side of the corresponding piston ring whereby the resilience of the ring is unimpaired and the flow of the lubricant back to the crank case is made more gradual and uniform." It will therefore be seen that the annular channel is not new with Teetor, and that communication between this channel and the inner cylindrical surface of the ring is likewise lacking in novelty. It is difficult to see invention in enlarging the perforations of Leighton through the body of his piston ring into the elongated slots of Teetor, and certainly there can be no invention in drilling holes in the piston to communicate with the slots. Given the annular channel the double contact was, of course, inevitable.

 Response to the Leighton reference, that it is a patent in the steam engine art, was to be expected. But the two arts are analogous, at least in so far as the present combination of elements is common to both. The assembly and co-operation of piston, ring, and cylinder in the internal combustion engine no doubt came quite naturally and obviously to the early designers of gas engines. Indeed Teetor himself leaves little doubt as to the closeness of the relationship and does not cut himself off from the ancestral estate. "My invention," he says, "is of particular serv-

ice in connection with internal combustion hydro-carbon engines, though the invention is not to be thus restricted," and describes his patent as for an engine. So with some of the earlier inventors. Ericsson, No. 775,213, 1904, recites the object of his invention to be to provide a packing for the pistons of steam or gas engines or any form of reciprocating pistons. What this court said in Jackson Fence Co. v. Peerless Wire Fence Co., 228 F. 691, 694, is peculiarly applicable here: "The field of prior art must be at least as broad as the field of infringement. * * * This is only an application of the familiar rule that whatever infringes if later, anticipates if earlier." The inventor stakes out the area in respect to which we search his title.

 Appellant's criticism of the Leighton reference is also based upon a differentiation of function between piston rings of steam and gas engines, it being said that one operates to secure balanced compression while the main purpose of the other is uniform and efficient lubrication. Leighton was also concerned with a problem of lubrication for the full length of the piston stroke. This aside, however, and conceding necessity for adaptation, yet where the adaptation itself involves no inventive thought, Teetor but found a new use for an old device, and this is not invention. Weir Frog Co. v. Porter, 206 F. 670, 674, 675 (C.C.A.6); Grand Rapids Refrigerator Co. v. Stevens, 27 F.(2d) 243 (C.C.A.6); Voightmann v. Perkinson, 138 F. 56 (C.C.A.7); Bullock Electric Mfg. Co. v. General Electric Co., 162 F. 28 (C.C.A. 3). In the first of the cited cases it was said: "When it was seen that the means employed were old, even in substantially the same form and substantially the same association, each was held to be not a new result, but only a new use of an old device —a newly observed or discovered function of a well-known thing."

Even were we to recognize such departure from the steam engine art in the development of internal combustion engines as to substantially destroy the analogy between them, such gap as may appear between Leighton and Teetor is bridged by the patent disclosures specifically relating to gas engine piston rings. The drilled holes of Leighton had already become the elongated slots of Taylor, 1,542,423, and communication between piston ring and piston had been shown in Johnson, 1,240,456,

and LaCourse, 1,472,073. Indeed, as was pointed out by the master below, the elongation of the drilled holes of the prior art to secure greater portage was made necessary by the configuration of the piston ring and so was inevitable rather than inventive when the development of more rapid revolution in high compression engines required more rapid circulation of lubricant. In any event, the capacity of the ports was always reached by trial and error, and probably still is.

The plaintiff's great commercial success with the patented ring both as standard equipment and for replacement is strongly urged upon us as proof of invention. Were the issue doubtful, and were there not ample explanation otherwise, it might be impressive. But the plaintiff is a long established manufacturer with a wide reputation for excellence of product, has a highly developed sales organization, and maintains "a larger national advertising program for its distributors than any other piston ring manufacturer." Here was not a case of "the world making a beaten track to its door," and no such spontaneous public interest followed a mere trade announcement as we noted in Naivette, Inc., v. Bishinger (C.C.A.) 61 F.(2d) 433.

The decree below is affirmed.