## UNITED STATES GYPSUM CO. v. CONSOLIDATED EXPANDED METAL COMPANIES.

### No. 8788.

Circuit Court of Appeals, Sixth Circuit.

Oct. 6, 1942.

Walter J. Blenko, of Pittsburgh, Pa. (Kwis, Hudson & Kent, of Cleveland, Ohio, and Stebbins & Blenko, of Pittsburgh, Pa., on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

Involved in this appeal from a decree adjudicating patent validity and infringement, are certain of the claims of patent 1,950,372 granted March 6, 1934, to L. W. Cross for "expanded metal and method and apparatus for manufacturing the same." The claims in suit are Nos. 10, 11, 12, 13, and 14, for a method of removing rough edges and burrs from expanded metal fabric and smoothing the diamond shaped openings therein by brushing it with metallic bristled brushes at high velocity, claim 16 for the product having its edges and corners throughout the expanded metal body brushed smooth, and claim 18 for the apparatus with which to practice the method and produce the product.

No issue of infringement is presented, the controversy being solely with respect to the validity of the claims. The special master, in an exhaustive and painstaking report, concluded that all of the claims were invalid, including claim 15, in respect to which a disclaimer has been filed so that it is no longer in controversy. The court reversed as to all claims still in suit, and the alleged infringer has appealed. To what extent the court's decision may have been influenced by the assumption that the defendant's adoption of the patent disclosures is a tribute to the validity of its claims, we are unable to say. That it did so assume is made clear by the comment that such adoption speaks (for validity) "with undeniable force." This observation requires and makes appropriate some general observations.

Though it be elementary to do so at this late date in the development of the patent law, it is necessary to recall that three elements are requisite to validity, to-wit: novelty, utility, and invention. It has been held in adjudications without number, that one who appropriates the teachings of a patent may not deny the utility of the invention. This is, of course, both reasonable and logical. It does not follow, however, that one who is foreclosed from denying the usefulness of a concept is likewise foreclosed from questioning its novelty or the exercise of invention in the development of

Arthur A. Olson, of Chicago, Ill. (Arthur C. Denison, of Cleveland, Ohio, Albert H. Pendleton, Arthur B. Seibold, Jr., and Thiess, Olson & Mecklenburger, all of Chicago, Ill., and Wood, Arey, Herron & Evans. of Cincinnati, Ohio, on the brief), for appellant.

product, method, or machine. It is illogical to base a presumption of patent validity upon the unauthorized adoption of patent disclosures, since all controversies as to validity arise through infringement, and may not otherwise arise. One who reproduces a patented device proclaims to the world his disbelief in the validity of the patent, his purpose not to be circumscribed by it, and invites a suit for infringement so that validity may be adjudged, and the closer the reproduction the plainer is his challenge to validity. It is only by becoming an infringer that one gains opportunity to assail a patent in his own interest and that of the public. To base a presumption of validity upon such course is as though one were to say that open and adverse possession of land is an admission of a claimant's title. We therefore approach the issue of validity without adding to the usual presumption attaching to the grant of the patent, a presumption of validity based on the absence of an issue of infringement.

The present invention has to do with so-called expanded metal. This is the product of an old art dating back to 1862. The process of manufacture was greatly improved, however, by the disclosure of Golding in his patent 527,242, adjudicated in Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034. There it is sufficiently explained that expanded metal is made by the use of knives making series of slits across the sheet, while at the same time partially severed portions of the metal are carried downward in a stretching operation. The slitting and stretching is repeated in such manner that expansion is obtained by the distension, or elongation of the severed strand. The first operation produces a series of stretched loops or half diamonds, while the second converts them into a series of full diamonds. As the knife of the machine first penetrates the steel sheet it has a cutting action, but its further penetration causes a rupturing or fracturing of the metal through the remainder of its thickness, in consequence of which the fractured surface of the strand is left in condition of dangerous sharpness. As the knives wear and become dull the tearing action becomes more pronounced, and ragged burrs are left upon the edge of the fractured surfaces which frequently cause injury to persons handling the fabricated product.

It is with the elimination of such sharp edges and burrs that Cross was concerned.

It is urged upon us that the problem dates back to 1885, and that it remained unsolved for more than forty years, until Cross, after long search for a solution, in 1928 perfected the method and machine disclosed in his patent.

It must be understood that the burrs and sharp edges which it was desirable to remove, do not lie in the surface planes of expanded metal, but between those planes and within the diamonds which constitute the mesh work. Consequently, one's hand may be moved over the surface of expanded metal without injury. It is only when the fingers are thrust into the diamonds that there is danger of laceration to those who handle the material. The problem which Cross claims to have envisioned was the removal of the burrs and edges between the top and bottom planes of the sheet, and his solution was to brush them away with wire bristled brushes. Such brushes are concededly old as shown, for example, in the patent to Wooster, 82,780, as far back as 1868. The plaintiff seeks adjudication of validity as for an inventive concept on the ground that Cross used the brushes on a material never before so treated and in a new way, so that the brush bristles function differently than do those of the prior art and thereby produce a new result. The new mode of using wire brushes resides, it is contended, in the use of their side action instead of the tip action of the prior art. In the Cross machine the bristle projects past the bottom plane of the sheet and into the diamond. As the bristle moves forward its side engages the sharp edges of the strand, and, by reason of its high speed, there is a process of attrition which results in removal of metal from the edge and innumerable repetitions of this attrition effect a rounding and smoothing of the inner edges of the diamonds. Moreover, it is said that Cross teaches that the brush bristles should move in a direction lengthwise of the diamonds, and that this teaching is contrary to what seemed obvious. He also taught a four-fold brushing longitudinally of the diamonds, and that by utilizing the side action of the bristles a thorough rounding of the sharp and burred strand edges is achieved with the result, it is now claimed, that there was produced for the first time in the expanded metal art a safe product which has greatly increased the usefulness of expanded metal to the end that the processed fabric has enjoyed an outstanding commercial success.

The art of brushing sheet metal by machines to remove scale and roughness, is quite old, and the record is replete with patent references and prior uses. Buckman, Nos. 451,263 and 451,264, in 1891, disclosed apparatus for cleaning sheet metal plates; Broderick, No. 869,478 was a machine for scouring and scratch-processing metal ware; Carpenter, No. 884,313, in 1908, was for a machine for scouring sheet metal with roller brushes, preferably of wire; Lakeman, No. 1,633,216, in 1927, had a machine for cleaning electrotype plates by brushing; Welser, No. 1,643,866, in 1927, was a mechanism for operating cleaning brushes and similar apparatus; and Hagen, No. 1,687,201, in 1928, also disclosed a brushing machine. There were many others, although a precise anticipation of the Cross apparatus does not appear. It is quite clear, however, from an examination of the prior art, that one having the concept of removing sharp edges or burrs from flat surfaces by means of brushing, would have found little difficulty in organizing a machine to accomplish the result.

 Our problem is to determine whether Cross, in his apparatus, and in the light of the problem he sought to solve, exercised invention in designing an apparatus for brushing perforated surfaces. His apparatus claim 18 is printed in the margin.[1] The Buckman patents, concededly the most pertinent references, disclose a machine having all of the essential elements of Cross, and there is little doubt that Buckman could have been made to do the work of Cross. True, some adaptation would have been required, but in the main it would have consisted merely of adjustments quite obviously within the skill of the art. This requires the application of the principle that where the adaptation involves no inventive thought the patentee has found but a new use for the old device, and this is not invention. Perfect Circle Co. v. Hastings Mfg. Co., 6 Cir., 88 F.2d 813; Weir Frog Co. v. Porter, 6 Cir., 206 F. 670; Detroit Stoker Co. v. Brownell, 6 Cir., 89 F.2d 422, 423. In the last cited reference we said: "However meritorious may be the inventor's thought in terms of result,

unless the means adopted in attaining such result are novel and denote invention, either separately or in combination, he may not have a valid patent, for we are dealing with a machine and not a method." Citing Reo Motor Car Co. v. Gear Grinding Mach. Co., 6 Cir., 42 F.2d 965, 968. In Nestle-Le Mur Co. v. Eugene, Ltd., 6 Cir., 55 F.2d 854, we pointed out, somewhat in detail, the essential differences between apparatus and method to the conclusion that while patents for a process and for a machine are related and are often founded upon the same mental concept, yet in substance they are independent and radically different, and while a process may be altogether new the machinery suitable to perform it may not be new or patentable.

 Emphasis is by the appellee placed on the fact that the Cross machine was designed to operate on material never before so treated. This, of itself, does not, of course, denote invention. That the brush bristles of Cross functioned differently from the way bristles of prior art brushes had functioned, is equally lacking in persuasiveness of the exercise of inventive genius. The prior art machines, it is true, mainly were concerned with the brushing of flat surfaces, but the brushing of perforated surfaces involves merely a matter of adjustment of the brushes to the work, and, as the master so well said, "The brush couldn't help itself doing what it, (did)." The contention that the art of brushing perforated surfaces is new and not analogous to the brushing of imperforate surfaces, would seem to be but a play upon words even were we without the candid admission of the plaintiff's expert that the Cross patent lies in the old brush-scratching art. In any event, the prompt recognition by the Supreme Court in Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997, that sound film patents but applied the skill and wisdom of photography, should put a period to the fanciful distinction here asserted. See, also, Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 91 and 92, 62 S.Ct. 37, 86 L.Ed. 58; Dunham Co. v. Cobb, 6 Cir., 19 F.2d 328; Perfect Circle Co. v. Hastings Mfg. Co., supra. Our decision in Lake-

[1] 18. Apparatus for brushing slitted and expanded metallic meshwork sheets including cooperating brush and guide devices, the bristles of the brush device having relative movement with respect to the fabric sheets, and the said devices being relatively so located as to position the meshwork sheets during brushing thereof so that the ends of the brush bristles project through meshwork openings at least to the median plane of the sheets.

wood Engineering Co. v. Walker, 6 Cir., 23 F.2d 623, has often been urged upon us in an effort to establish one art as remote from another. No possible relationship there existed and it could not be implied that the inventor of a road surfacing machine received suggestion from an instrumentality in a field wholly foreign. Even so, we observed in Page Steel & Wire Co. v. Smith Bros. Hardware Co., 6 Cir., 64 F.2d 512, that the Lakewood Engineering case was a border-line case and that beyond it we had no occasion to go.

But were recorded prior art not such as to greatly narrow the field of invention, so that the advance made by Cross must be construed as within the skill of the art rather than invention, it would still seem clear that prior art uses certainly did so. The Buffalo machine of the American Brass Company was a substantial equivalent of the patented machine, and inter partes tests showed that it would brush expanded metal and render its sharp and rough edges sufficiently smooth so that it would become a commercially practical product. Claim 18 reads upon the Buffalo machine, and such adaptation of the latter as was required was clearly within the skill of those in the practical art. The same is true of the American Brass Company's so-called 'Ansonia machine.

■ Much difficulty has, of course, been experienced by the courts in determining what improvements lie within the expected skill of the art. We adverted to this in Cleveland Trust Co. v. Schriber-Schroth Co., 6 Cir., 92 F.2d 330, 334. Older cases are not very helpful. The patent law is presently in a state of flux. Much water has flowed over the patent dam and we must recognize as have other courts and our own [Cleveland Trust Co. v. Schriber-Schroth Co., 6 Cir., 108 F.2d 109] "the high standard demanded for invention by the decisions of the Supreme Court in recent years," [Buono v. Yankee Maid Dress Corp., 2 Cir., 77 F.2d 274, 276]. We cannot "ignore the fact that the Supreme Court, whose word is final, has for a decade or more shown an increasing disposition to raise the standard of originality necessary for a patent," [Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632, 636], and that it is our "duty, cautiously to be sure, to follow not to resist." [Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208, 218]. This is imperative even though we are unable to go the whole way with Judge Learned Hand in his observation in the Picard case, supra,[2] if correctly interpreted in the concurring opinion in that case as "a negative test" by which it is determined that "nothing is an invention which is * * * progress * * * through trial and error." We remember that the patent law rewards both invention and discovery and that genius has well been defined as "an infinite capacity for taking pains." If the story of Edison's long continued search for an incandescent lamp filament be true, his genius responds to the definition.

Claim 16 is for smooth expanded metal and is set forth below.[3] There was much evidence that brushing had been done on expanded metal in a number of plants more than two years prior to the Cross conception and its reduction to practice. This evidence was not documented and rested chiefly on the fallible recollection of witnesses with little precision in respect to dates. It was rejected by the master as establishing anticipations, though with reluctance, and under compulsion of the presumption which attaches to the validity of a claim by its grant from the patent office and its failure to respond to the measure of proof required by the decisions to overcome it. Radio Corp. v. Radio Laboratories, Inc., 293 U.S. 1, 54 S.Ct. 752, 78 L. Ed. 1453.

■ The master nevertheless held the claim invalid on the ground that Cross was not the first to conceive and reduce to practice expanded metal brushed smooth as a new and useful product, and with this conclusion we agree. In February, 1926, Cross sent five pieces of expanded metal to the Manufacturer's Brush Company at Cleveland, advising that company that the plaintiff was interested in knowing whether the sharp edges could be removed with

---

2 "Unless we are to mistake for invention the slow but inevitable progress of an industry through trial and error, and confer a monopoly merely upon the exercise of persistent and intelligent search for improvement, there was no invention in this."

3 "16. Metallic fabric of the slit and expanded type having strands and strand interconnecting bonds forming mesh work openings having relatively sharp corners at points where strands and bonds are interconnected, said fabric having the edges and corners throughout the entire expanded metal body brushed smooth."

a wire brush and requesting quotations on equipment necessary to do the work. On March 8 there was response that the sharp edges could be removed and that the samples were being returned thoroughly cleaned. The plaintiff was informed that the processing required considerable speed behind the brush, was advised as to the size and type of brush needed, and was offered suggestions as to the organization of equipment to do the work. The master's reasoning compels agreement with his conclusions. Given the circumstances that there were no instructions whatever from Cross as to how the brushing should be done and no difficulty experienced by the Brush Company in doing it, no inventive thought may be perceived in the mere idea of using brushes to smooth expanded metal, and if so, it was not the conception of Cross. It is true that Cross testified that the samples were not brushed entirely to his satisfaction, but in what respect the brushing failed, was not stated. In any event, they were sufficiently processed so that Cross later submitted 32 larger pieces to be brushed, and that they were not treated by the Brush Company was due only to the fact that plaintiff was not willing to pay the cost of building the necessary conveyor. We hold claim 16 to be invalid.

Another consideration contributes to this conclusion. Claim 15, now disclaimed, is identical with claim 16, with the single exception that the fabric therein referred to is described merely as "smooth," whereas claim 16 characterizes it as "brushed smooth." Without finding it necessary to discuss the question whether the similarity is such that the failure to disclaim 16 invalidates the patent, we are, nevertheless, of the opinion that claim 16 does not describe a new product and is invalid under the rule that a patentee who does not distinguish his product from what is old except by reference, express or constructive, to the process by which he produced it, cannot secure a monopoly on the product by whatever means produced. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Westinghouse Electric & Manufacturing Co. v. Quackenbush, 6 Cir., 53 F.2d 632. The master rejected the defense that claim 16 is functional, on the ground that while smooth expanded metal was an old product, yet metal, the smoothness of which was obtained by brushing, was something new in the art and might be protected by a claim which distinguished from prior art only by reference to the process by which it was produced. We are not in accord. Were there virtue in brushed smoothness as distinguished from smoothness obtained by other processes such as by filing or the use of abrasives, there might be persuasiveness in the argument. No such virtue is suggested. Since smoothness is the essential characteristic of the patented product, and the single quality proclaimed as giving it utilitarian advantage over prior art, it would seem to follow that smooth metal obtained by a process other than brushing, is its complete equivalent. The limitation incorporated in the claim by the term "brushed" therefore does not distinguish the patented product from others of equal quality, except by reference to the process by which it is produced and so is functional. Compare Black-Clawson Co. v. Centrifugal Engineering & Patents Corp., 6 Cir., 83 F.2d 116.

It is unnecessary to recite the terms of the method claims or analyze their elements. In the main they are confined to a method of brushing expanded metal by metallic bristled, rotary brushes moving at high speed in a plane substantially perpendicular to the plane of the fabric and parallel to the long dimensions of its openings. There was no inventive thought in a mere conception of brushing expanded metal, in the light of the teachings of the prior art. Nor is there anything of invention to be perceived in the discovery that the desired result would be obtained by brushing it in one way rather than another. Having the thought of removing sharp edges by brushing, it would be a perfectly obvious thing to experiment in each of several directions. Indeed, failure to do this would characterize as dull even an otherwise highly skilled artisan. Moreover, if we are right in our conclusion that the materialization of the concept of smoothed expanded metal attained by brushing, was an achievement not denoting inventive thought, and in any event not the achievement of Cross but rather that of the Manufacturer's Brush Company, then Cross was not entitled to a patent thereon and the claims are invalid.

In reaching this conclusion we are not unmindful of the urgent insistence of the appellee upon the existence of a long felt need and alleged commercial success promptly following manufacture responding to the disclosures of the patent. It has,

894

however, become axiomatic that commercial success will tip the scales in favor of validity only when otherwise there is doubt as to the patentability of asserted claims. In Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, we had occasion to note that there are many considerations which delay the readoption of an old or the utilization of an obvious mechanical technic even when the need therefor has long been sensed and the solution perceived as lying in the public domain. Here the record likewise suggests that the solution of the problem and the delay in adopting it depended upon circumstances other than the materialization of an inventive concept. The smoothing of the sharp edges of expanded metal, either by brushing or by other expedients, was an expensive process. It required operations adding greatly to its cost, and there must always, in such cases, be exercised a wise business judgment as to whether acceptance by the trade of a more expensive commodity will justify capital investment in new machines. It is apparent that though Cross and his employers had ascertained from the Manufacturer's Brush Company that expanded metal could be smoothed by brushing in 1926, there was no development of process or machine for commercial purposes until 1931, and not until the Specialty Manufacturing Company had developed rotary brushes of special analysis steel and so made possible the marketing of brushed material at no substantial price increase over the unbrushed product. A somewhat similar situation was perceived in the Firestone cases. There an old process in the winding of tire carcasses known to the bicycle tire industry was resumed only when cord fabric, having much greater extensibility than woven fabric, came upon the market and so made feasible the shaping of heavy motor car tires by a method long known to those in the bicycle tire industry. That commercial success alone or the apparent solution of a long perceived problem will not of itself vitalize an otherwise invalid patent has been made forcibly clear to us by the decisions of the Supreme Court in Schriber-Schroth v. Cleveland Trust Co., 305 U.S. 47, 573, 59 S.Ct. 8, 83 L.Ed. 34, and 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132, when considered in the light of our holdings in the same cases, Cleveland Trust Co. v. Schriber-Schroth Co., 92 F.2d 330, and Id., 108 F.2d 109. The evidence there of a long felt need and commercial acceptance of a solution was fully as dramatic as that here presented, if, indeed, not more so.

Decree reversed, and the cause remanded with instructions to dismiss the bill.