32 C.C.P.A. (Patents)

### Application of HOLSLAG.

### Patent Appeal No. 4992.

Court of Customs and Patent Appeals.

April 9, 1945.

A. D. T. Libby, of Newark, N. J. (Harry B. Rook, of Newark, N. J., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner, involves five claims (being all the claims), numbered 1 to 5, inclusive, of appellant's application for a patent relating to a mask designed for protecting the heads and faces, most especially the eyes, of arc welders.

The broadest of the claims (No. 1) reads as follows:

"1. A mask for use in connection with arc welding, comprising a holder having an observation opening, guide means associated with the opening and film material positioned adjacent the opening so portions thereof may be extracted through the guide means over the opening, the film material being opaque to usual day light, thereby allowing the user of the holder to look through the film at the arc without injury to the user."

Claim No. 2 is more specific in describing a structure which embraces certain features not designated in claim 1. It reads:

"2. A mask for use in connection with arc welding, comprising a holder having an observation opening, guide means associated with the opening, a thin, transparent strip permanently fixed in the guide means over the opening, a film combination positioned adjacent the opening so sections of said combination may be extracted through the guide means over the opening in front of the permanently fixed strip, the film combination including a shielding film material treated to prevent the arc from injuring the eyes of the user, and a thin transparent outer protecting material arranged to be simultaneously extracted with the shielding film."

Claim 3 defines a mask "giving protection to the entire head of the user." Claims 4 and 5, like claim 2, define a transparent protecting film over the outside of the opaque film.

While it is thought the device may be fairly visualized from the quoted claims,

the following descriptive statement, taken from the brief of the Solicitor for the Patent Office, is apropos (record page references and indicating numerals being omitted):

"As shown in the drawing of the application the mask consists of a portion which covers the head of the welder and a window on the front thereof through which the welder may see the work. In order to protect the eyes of the welder while allowing him to see the work, it it necessary that the window have a member which is more or less opaque to ordinary light and sufficiently transparent to enable the welder to see his work when the same is illuminated by the electric arc. The somewhat opaque member in appellant's device is a film which is described as being of a suitable thickness and having characteristics which will allow the user to look through the film at the arc without injury to his eyes. The film is made of some flexible material. In view of the fact that such a film is subject to injury in the use of the device as, for example, becoming scratched, it is desirable that the film be readily replaceable. To accomplish this purpose the appellant makes his film in the form of a relatively long strip which is wound on the reel within the casing mounted at one side of the window. One end of the film extends across the window and the remainder is on the reel. If the portion of the film in use should become damaged, the end of the film may be drawn out, thus bringing opposite the window a new portion of the film. The damaged portion may then be torn off and discarded. The tearing off of the used film is facilitated by a cutting edge located at the side of the window opposite the reel. In order to protect the film while in use appellant provides also another film which is transparent and is wound parallel with the film on the reel."

To the foregoing, it may be added that the protecting film strip is on the outside of the main or principal film, being coextensive therewith, and, as defined in claim 2, there is a third film strip permanently attached so as to be immediately next to the eyes.

In finally rejecting the claims the examiner cited as references two patents, viz.:

Holslag, 1,305,364, June 3, 1919.
Parmelee, 2,119,439, May 31, 1938.

The Holslag patent was issued to appellant, and it will be observed that it expired in 1936. The drawing of that patent discloses a mask, the head-covering body of which is substantially of the same construction as that disclosed in the present application. The sight opening provided therein is surrounded by a frame in which are carried a series of different colored glass shields "through which," the specification states, "the operator may observe the weld or the work that is being performed." The shields were features for protecting the eyes of the operator from the intense glare produced in the welding operation. The patent device had no mechanism corresponding to the mechanism of the application for passing the movable film elements before the eyes and severing them as above described.

In its general structure the Parmelee device closely approaches the general structure of the application here involved. Parmelee's mask (entitled "Face Protector") was designed particularly to protect "the face, nose and eyes" of persons operating devices in the spraying of plants, trees, and the like with "irritating or harmful liquids or materials." So far as the eyes are concerned, the protective element consists of a roll of transparent film on a reel attached to the mask at one side of the sight opening. When the transparency of that part of the film immediately before the eyes becomes clouded so that sight is obscured, the operator seizes the end of the film and draws it out to a point where a new section of film comes before the eyes and tears off the clouded portion, being aided in doing so by a cutting edge similar to that of appellant.

With respect to the masks and the film-moving mechanisms attached thereto, we are unable to discern any material differences between the disclosures of the Parmelee patent and the disclosures of appellant's application.

In the final analysis such differences as exist relate solely to the film elements, and comparison must be made accordingly.

Fairly construed the Parmelee patent is limited to the use of a single *transparent* film, and claim 1 (the broadest claim) of the application is limited to a single *opaque* film. The principal or basic film described in appellant's claims 2, 3, 4, and 5 obviously is an opaque film. Some of these claims, however, call for a *transparent* strip per-

manently fixed as described above, and others call for a *transparent* strip over the outer side of the opaque film so arranged that it runs with the opaque film and is torn off in sections with the latter.

 So, the primary question presented is whether there was invention in substituting appellant's basic opaque strip for the transparent strip of the Parmelee patent. The tribunals of the Patent Office did not think so, and we agree with their view, particularly in view of the teaching of appellant's patent respecting the colored glass shields therein defined.

The secondary question is whether it constituted invention to add the outer transparent film strip, movable and severable with the basic strip, and the inner transparent, permanently fixed film strip on the inner side. It does not seem to us that these additions constitute anything more than the exercise of mechanical skill, which, in substance, was the holding below.

The decision of the board is affirmed.

Affirmed.