## GENERAL MOTORS CORP. et al. v. ESTATE STOVE CO. et al.

### No. 11450.

United States Court of Appeals
Sixth Circuit.

Decided April 17, 1953.

Harry W. Lindsey, Jr., George N. Hibben, Chicago, Ill., on the brief, Davis, Lindsey, Hibben & Noyes, Chicago, Ill., Robert R. Candor, Dayton, Ohio, of counsel, for appellants.

Greer Maréchal, Greer Maréchal, Jr., and D. L. Bugg, Dayton, Ohio, Daniel L. Morris, New York City, for appellees.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellee filed a petition for rehearing of the decision of the court in the above case,[1] setting forth as grounds thereof that the appeal was governed by the new Patent Act of 1952, Title 35 U.S.C.A. § 1 et seq.; that, by the provisions of such statute, which the court did not take into consideration, a new test of patentability was set forth embodying a standard of invention by which the validity of patents is to be judged; that the Act introduced new provisions as to presumption of the validity of a patent; and that the burden is now upon a party attacking the validity of a patent to establish that the subject matter as a whole would have been obvious. In this regard, it is said that the test is not, subjectively, what the court may believe would have been obvious, but that the issue is now, objectively, whether a defendant has established his case and succeeded in overturning the new statutory presumption.

The new codified Patent Act became effective January 1, 1953. The appeal in this case was perfected long before that time, the case having been orally argued before this court several months before the new statute went into effect. However, the decision of this court was not announced until thirteen days after the effective date of the Act.

1. Reported in 201 F.2d 645.

Appellee contends that the new test of patentability is found in Title 35 U.S.C.A. § 103,[2] in which it is provided that even though "the invention is not identically disclosed or described as set forth in section 102",[3] a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." It is further stated that Section 282 of the Patent Act of 1952 adds wholly new provisions which lift from the court the burden of determining, subjectively, whether a patented improvement may have been obvious or not obvious to a man skilled in the complex field outside the court's experience; that, in providing that a patent shall be presumed valid, the statute, as the report of the Senate Judiciary Committee observed, introduces a declaration of the presumption which had been stated by courts but had, up to that time, no expression in the statute, and empha-sized this presumption by providing that "The burden of establishing invalidity of a patent shall rest on a party asserting it." The Revision Notes in the Appendix to the Report of the Committee set forth that the new provision of the statute declares the presumption of validity theretofore existing.

In advancing its argument, appellee submits, at least implicitly, that, under the new Act, the evidence establishing invalidity must consist of the testimony of witnesses, and that the court's finding of invalidity must be sustained by such testimonial evidence. We find no warrant in the Act for such a conclusion, nor that the function of the court has changed in this regard since Judge Learned Hand made a memorable declaration in the field of patent law, in Kohn v. Eimer, 2 Cir., 265 F. 900, 902, when he stated: "At the outset the appellant challenges our right to examine the prior art patents at all, because the appellee called no expert at the trial to explain them. Waterman v. Shipman, 55 F. 982, 987, 5 C.C.A. 371. We have not the

2. "§ 103. *Conditions for patentability; non-obvious subject matter*

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made. July 19, 1952, c. 950, § 1, 66 Stat. 798."

3. "§ 102. *Conditions for patentability; novelty and loss of right to patent*

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

"(c) he has abandoned the invention, or

"(d) the invention was first patented or caused to be patented by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States, or

"(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

"(f) he did not himself invent the subject matter sought to be patented, or

"(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other. July 19, 1952, c. 950, § 1, 66 Stat. 797."

slightest wish to minimize the vital importance of expert testimony in patent suits, or to suggest that we are not absolutely dependent upon it within its proper scope; but that scope is often altogether misapprehended, as the appellant has misapprehended it here. Specifications are written to those skilled in the art, among whom judges are not. It therefore becomes necessary, when the terminology of the art is not comprehensible to a lay person, that so much of it as is used in the specifications should be translated into colloquial language; in short, that the judge should understand what the specifications say. This is the only permissible use of expert testimony which we recognize. When the judge has understood the specifications, he cannot avoid the responsibility of deciding himself all questions of infringement and anticipation, and the testimony of experts upon these issues is inevitably a burdensome impertinence."

We fail to see the basis upon which the conclusion can be drawn, as argued by appellee, that the Patent Act of 1952 provides a new test of patentability, in so far as the issue of patentability in the instant case is concerned; and the legislative history appears to afford no support to appellee's view that a new test as to "obviousness" has been embodied in the Act. In this regard, the Senate Committee on the Judiciary, to which the bill to codify the patent law was referred, in its Report, repeating in substance the House Report, sets forth:

"Section 103, for the first time in our statute, provides a condition which exists in the law and has existed for more than 100 years, but only by reason of decisions of the courts. An invention which has been made, and which is new in the sense that the same thing has not been made before, may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent. That has been expressed in a large variety of ways in decisions of the courts and in writings. Section 103 states this requirement in the title. It refers to the difference between the

subject matter sought to be patented and the prior art, meaning what was known before as described in section 102. If this difference is such that the subject matter as a whole would have been obvious at the time to a person skilled in the art, then the subject matter cannot be patented.

"That provision paraphrases language which has often been used in decisions of the courts, and the section is added to the statute for uniformity and definiteness." Senate Report No. 1979, June 27, 1952 (To accompany H. R.7794). See House Report No. 1923, May 12, 1952 (To accompany H.R. 7794).

The Revision Notes in the Appendix to the Senate Report further state:

"There is no provision corresponding to the first sentence [of Sec. 103] explicitly stated in the present statutes, but the refusal of patents by the Patent Office, and the holding of patents invalid by the courts, on the ground of lack of invention or lack of patentable novelty has been followed since at least as early as 1850."

■ From the foregoing, it would appear that the new Act has done no more in this respect than to adopt the test of so-called "obviousness" which has, in the past, been enunciated by the courts, and that it did not provide a new test differing from that which has been generally followed in the adjudication of patent cases.

Appellee further refers to this court's holding that the patent in issue in the instant case with respect to obtaining balanced heat by the use of upper and lower heating elements of differing capacities appeared too indefinite to sustain a finding of validity on this aspect of the patent, and in this regard, cites Section 112 of the new Patent Act, and declares that the statute now provides that the claims point out "subject matter which the applicant regards as his invention" as distinguished from the strict provisions of the now repealed statute, R.S. § 4888. Appellee also points out that, in a wholly new

paragraph directed to functional claims, it is provided:

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

Appellee takes exception to the statement in this court's opinion that there appears no scientific proof that any certain proportions of heat between the upper and lower heaters in an oven give perfectly balanced heat, or an even distribution of heat, and that the claims with respect to obtaining balanced heat are too indefinite to sustain a finding of validity, arguing that under the newly enacted provision of Section 112, Bradbury's claims clearly pointed out what he "regards as his invention"; that Section 112 does not require scientific proof of the exact amounts of heat to give perfectly balanced heat; and that, since Section 282 places upon appellant the burden of establishing invalidity of the patent as not complying with the "specifications" requirement in Section 282, the Bradbury claims could not be held too indefinite to sustain a finding of validity, unless there were evidence in the record to establish that they are too indefinite.

Section 112, in its first two paragraphs, provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

The same exact requirements are specified in like language in repealed R.S. § 4888 which also required that the inventor

"shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

As to our view that the claims with respect to obtaining balanced heat were too indefinite to sustain a finding of validity on this aspect of the patent, such conclusion was not based merely upon the observation that there was no scientific proof that any certain proportions of heat between the upper and lower heaters gave such a balanced heat, or an even distribution of heat throughout the oven, but also on the vagueness of the claims setting forth the heating capacities of the upper heater as being "smaller" or "considerably less," and the lower heater as being "greater" or "substantially greater," together with the evidence of uncertainty as to what proportions of heat from upper and lower elements would provide uniform heat distribution; and we can add nothing here to the extensive discussion in the consideration of this particular subject already set forth in our opinion.

▋ As to the claim that under Section 282, the court, having found invalidity, should proceed to rule on the claims of infringement, we are of the view that this section has in no way changed the law on the subject as it existed prior to the enactment of the new statute; and, although we stated, on the issue of infringement,

that our examination of the record led us to the conclusion that appellant, in its structure which was claimed to infringe, merely followed the prior art, we are of the opinion that since we found that the patent was clearly invalid, it was unnecessary to pass upon the question of infringement.

■ Aside from the foregoing, however, the chief reason which appellant advances in opposition to the granting of the petition for rehearing is that the new Patent Act did not change the law with respect to this case, and, in any event, that it is not here applicable. It contends that the new statute, after setting forth the sections or parts of the Revised Statutes, or Statutes at Large, which were repealed, provided that any rights or liabilities then existing under sections or parts thereof should not be affected by such repeal. To this contention, appellee replies that since the Act provides that it take effect January 1, 1953, and that it "shall apply to unexpired patents granted prior to such date", the new Act here controls because of the fact that although the case was tried and heard in the district court and the court of appeals before the effective date of the statute, our decision was entered subsequent to that time.

We are of the opinion that the new Act does not apply to our adjudication of this case. In Texas-Miller Hat Corp. v. Switzer Bros. Inc., 5 Cir., 201 F.2d 824, 825, where the court of appeals reversed the district court's holding of validity and infringement in a case tried before the effective date of the new Act, it was said:

"The newly enacted Patent Codification Act did not go into effect until Jan. 1, 1953, and has no application to the present case. See last sentence of the new act, Sec. 5, which preserved existing rights under repealed sections."

■■ In commenting on certain observations in the petition for rehearing, it may be remarked that, of course, combination patents are not to be stricken down and declared invalid by the courts through a process of subjecting each element to the test whether it be old. For patentable invention often consists of a combination of elements, each of which is known and in the field of the prior art. But the combination of the old parts or elements, in order to constitute patentable invention, must perform or produce a new and different function or operation than that theretofore performed or produced by them. It is not sufficient that the combination be superior to what went before in producing a more convenient and economical mechanism. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196. Where a patentee combines the best features of old structures without the disadvantages of any of them, resulting in a substantial improvement in performance over anything which had gone before, it must be found, in order to sustain the patent, that the increase of efficiency of the new combination is an "'unusual or surprising' consequence of the unification"; McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985, 989; or yields some "surprising or extraordinary result"; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971; and we adhere to our view that such a consequence and result were not achieved by the patents in suit.

■ It can not be denied, as we have already observed in the opinion in this case, that the patents in suit resulted in a considerable advantage, from the standpoint of convenience, over what had gone before, and were of great help to the user of an electric range, in simplifying the cooking operations and enabling them to be carried on at constant high temperature. Moreover, it can be said that the Bradbury electric range may have filled a long-felt want, and enjoyed commercial success. But these circumstances are not enough to warrant a finding of invention under the "severe test" applicable in the present day of rapid advance in the arts. McCord Corp. v. Beacon Auto Radiator Co., Inc., supra.

In an able and ingenious argument, appellee submits that, in specifying a new statutory standard of invention, the Act does not treat combination patents on a different basis from other patents, as it is claimed the Supreme Court did treat

them in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; that the new Section 103 defines a single standard of invention for all patents; that the subject matter as a whole would not have been obvious at the time the invention was made; and that the extent to which the Great Atlantic & Pacific Tea Co. case required a different, or more exacting standard, or a more severe test for combination claims than the single standard of invention for all patents, was rejected by Congress in the new Act.

We are, however of the view that the principle stated in the Great Atlantic & Pacific Tea Co. case is not modified by the new Act, but continues to be the law, and is here controlling.[4]

In accordance with the foregoing, the petition for rehearing is denied.

4. With regard to the standard of invention in combination patents as expressed by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, see McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985, 990, where the court of appeals said that "although the court below may perhaps have been in error in construing the A. & P. case as requiring as a *sine qua non* of invention a finding that the combination performs some new function in addition to the sum of the separate functions of its parts, nevertheless the court did not err in its ultimate conclusion that the claims in suit are invalid for want of invention, for, 'scrutiniz(ing) the claims in the light' of the rigorous standard required by the law as it stands today, no other finding is possible on the evidence of record."