William H. HARVEY, Paul E. Thies, and
The William H. Harvey Company,
Plaintiffs-Appellees,

v.

Roy LEVINE, Henry Feniger, Beacon
Manufacturing Company, and Wax
Products Manufacturing Company, De-
fendants-Appellants.

No. 15042.

United States Court of Appeals
Sixth Circuit.

Sept. 19, 1963.

William C. McCoy, Jr., Cleveland, Ohio,
McCoy, Greene & TeGrotenhuis, Richard
M. Howell, Cleveland, Ohio, on brief, for
appellants.

George Knowles, Cleveland, Ohio, Bos-
worth, Sessions, Herrstrom & Knowles,
Fred J. Samerdyke, Cleveland, Ohio, on
brief, for appellees.

Before MILLER, WEICK and O'SUL-
LIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Cir-
cuit Judge.

This action involves the validity and
alleged infringement of United States
Patent No. 2,750,216 issued to Paul E.
Thies on June 12, 1956, for an invention
relating to toilet bowl sleeve gaskets.
The District Judge held the patent valid
and infringed.

Prior to 1953 the plaintiff Thies had
been a journeyman plumber, a master
plumber and proprietor of a plumbing,

heating and electrical contracting business. The plaintiff William H. Harvey is the exclusive licensee for the United States of the Thies patent. Harvey also had experience as a journeyman and master plumber, and was in the plumbing contracting business in Omaha, Nebraska, prior to 1945, at which time he pioneered in the development and sale of wax ring sealing gaskets for toilet bowls. The plaintiff The William H. Harvey Company was incorporated in 1959 and became a sublicensee under the Thies patent.

The defendants Roy Levine and Henry Feniger, as partners, were engaged in selling, among other things, sealing gaskets. The partnership did business under the name of Beacon Manufacturing Company and also Wax Products Manufacturing Company. In July 1959 Beacon Manufacturing Company was incorporated and in February 1960 Levine and Feniger transferred some, if not all, of their partnership assets and business to the corporation, which continued in the manufacture and sale of the accused sleeve gaskets.

In their amended complaint the plaintiffs allege that the defendants wilfully infringed patent No. 2,750,216 by making, using or selling in the Northern District of Ohio bowl sleeve gaskets made or constructed in accordance with the invention disclosed and claimed in patent No. 2,-750,216 without plaintiffs' license or consent. Plaintiffs sought a preliminary and permanent injunction against making, using or selling by the defendants of bowl sleeve gaskets, for an accounting and for damages by reason of the infringement of their patent.

The defendants deny the validity of the patent and also the alleged infringement. They also filed a counterclaim asking for a declaratory judgment that the patent was invalid and that it had not been infringed by the defendants.

The patent in suit relates to toilet bowl installations, with the purpose of the invention being "to prevent dampness in floor areas around toilet bowls and thereby eliminate rotting or decaying of wood and other flooring materials around toilet bowls." The invention contemplates "a ring gasket of wax, sponge rubber, or other similar material, and a depending sleeve or skirt, the diameter of the lower end of which is less than that of the upper end, extended downwardly from the inner surface of the ring and having a flange on the upper end extended into the material of the ring."

The application for the patent states: "The object of this invention is, therefore, to provide a sealing gasket adapted to be positioned between the outlet opening of a toilet bowl and a nipple extended upwardly from soil pipe whereby the possibility of leakage between the parts is reduced to a minimum. * * * Another important object of the invention is to provide an improved gasket for sealing the connection between a toilet bowl and a drain or soil pipe below the bowl in which the gasket is adapted to be installed by the average artisan."

The two claims of the patent read as follows:

"1. In a sealing gasket for a toilet bowl, the combination which comprises a ring of pliable material, said ring being rectangular-shaped in cross section and having an annular slot in the inner surface, a sleeve positioned with the upper part nested against the inner surface of the ring and having an inwardly offset lower part providing a skirt, the diameter of which is less than that of the upper part, and a flange extended from the upper end of the sleeve and positioned in the slot of the ring.

"2. In a gasket for sealing the connection between a toilet bowl and soil pipe below the bowl, the combination which comprises a ring, rectangular shaped in cross section and having an annular slot extended from the inner surface into the body of the ring, the slot being positioned substantially midway of the height of the ring and the upper inner edge of the ring above the slot being re-

lieved providing an arcuate surface, and a sleeve positioned with the upper part nested against the inner surface of the ring and with an annular flange extended from the upper end embedded in the slot of the ring, said sleeve having an inwardly offset section spaced below the ring providing a depending skirt, the diameter of which is less than that of the upper part of the sleeve whereby with the sleeve positioned in a tube with the ring on the upper end of the tube, the skirt is spaced from the wall of the tube."

It will be seen from the above that the patent covers the combination of two elements, namely, a ring gasket of wax, sponge rubber or other similar material, and a depending sleeve or funnel extending downwardly from the inner surface of the ring. The ring gasket of the patented device is made of wax. The use of the patented article is as follows.

There are two kinds of toilet bowls. One is the "long horn" bowl, which is characterized by a long outlet or horn extending downwardly from the bottom of the bowl. The other kind of toilet bowl is a "short horn" bowl, which does not extend below the base of the toilet bowl unit. Both long horn bowls and short horn bowls have been known and available for many years. Long horn bowls were generally used prior to the end of World War II, but in recent years short horn bowls have supplanted long horn bowls to a considerable extent. The horn connects with the inlet end of the waste pipe extending upwardly from below. At least prior to the use of the wax gasket in 1945, this connecting joint was often the source of leakage, with resulting dampness of the floor and rotted floors around toilet bowls. The sleeve serves as an extension of the short horn, constitutes a bridge across the joint between the horn of the bowl and the inlet end of the waste pipe, and when held in place and sealed to both horn and waste pipe by the wax ring, it functions to conduct the effluent received from the horn down past the joint, thus preventing the liquid from traveling anywhere except in the desired path downwardly through the waste pipe. The effluent being discharged from the toilet bowl is centered and cannot flow against the inner surface of the waste pipe until it is below the joint. This prevents leakage at the joint and the resulting dampness of the floor and rotted floors around toilet bowls.

The defendants rely upon the prior art references of LeTarte patent No. 2,082,348, Freedlander patent No. 2,153,664, and Douglas patent No. 1,358,714. No one of these patents was relied upon as a reference in the patent office. Auer patent No. 1,333,368 and Cain patent No. 469,830 were considered by the patent office.

The District Judge, in holding the patent in suit valid, considered all of these references and held that they did not anticipate the Thies patent. For our present purposes we believe it is sufficient to refer to this discussion and ruling by the District Judge, which is reported at Harvey v. Levine, D.C., 204 F.Supp. 947, without repeating it here.

■■■ As stated in Allied Wheel Products v. Rude, 206 F.2d 752, 760, C.A.6th, and in Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911, 917, C.A.6th, there are three elements requisite to validity of a patent, namely, novelty, utility and invention. "Anticipation belongs in the field of novelty. To anticipate an invention is to negative novelty; but even though a patent is not anticipated, and is concededly novel, it may lack invention." The Patent Act of 1952 provides: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Section 103, Title 35 United States Code. Accordingly, accepting the

ruling of the District Judge on the issue of anticipation, without so ruling, we pass to the issue of invention, which the District Judge found in favor of the patentee.

■■ As a preliminary matter, it is urged upon us that a patent shall be presumed valid. Section 282, Title 35 United States Code; Williams Mfg. Co. v. United Shoe Mach. Corporation, 121 F.2d 273, 277, C.A.6th, affirmed, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537; Gibson-Stewart Co. v. Wm. Bros. Boiler & Mfg. Co., 264 F.2d 776, 778, C.A.6th, cert. denied, 360 U.S. 929, 79 S.Ct. 1448, 3 L.Ed.2d 1544. As recognized by the District Judge the presumption of validity is not conclusive and may be overcome by evidence demonstrating error in the patent office's determination. It has been held by this Court that this presumption is weakened if there is applicable prior art not considered by the patent office. Aluminum Company of America v. Sperry Products, Inc., supra, 285 F.2d 911, 916, C.A.6th, and cases cited therein. In the present case, the record indicates that the Douglas, LeTarte and Freedlander reference patents were not considered in the patent office. The District Judge recognized in his opinion that the Douglas reference was the best of defendants' references. Under the circumstances, we are of the opinion that the presumption of validity is not a material factor in our consideration of the validity of the patent in issue. General Motors Corp. v. Estate Stove Co., 201 F.2d 645, 664, C.A.6th.

As pointed out hereinabove, the patent covers the combination of two elements, namely, a ring gasket of wax, sponge rubber or other similar material, and a depending sleeve or funnel extending downwardly from the inner surface of the ring. Both of these elements are old in the art and are relatively simple ones.

Wax ring gaskets without a funnel or sleeve attachment have been on the market since 1945. The desirability and need of a tightly sealed connection between a toilet bowl and a soil pipe thereunder have long been recognized. From time to time unpatented means, such as the use of plaster, putty, and other materials have been adopted with varying degrees of success. The introduction of the wax ring gasket in 1945 marked the advent of the most effective and successful seal in the art to that time. It met with great success throughout the country. Although dampness of the floor and rotted floors around toilet bowls may have been caused by leakage, as well as by other causes, prior to the use of the wax ring gasket, there was substantial evidence that no leakage problems existed in the use of a simple wax gasket or sponge rubber gasket in a proper installation and that the seal effected by such a gasket was as efficient as a seal made pursuant to the teaching of the patent in suit.

The use of a funnel to direct and transfer a fluid from one vessel to another has been common practice for many years. In the present patent it performs that function in directing and transferring fluid in the toilet bowl through the horn into the soil pipe below. The patent does not specify any particular material for the sleeve or funnel and until January 1956 Thies manufactured and installed a lead sleeve in the patented device. Thereafter he made a sleeve of molded polyethylene and continued to use sleeves made of this plastic material. These plastic sleeves, being much lighter in weight than those of lead, had the advantages of lower cost of material and lower freight charges.

Although the general combination of a wax gasket and a sleeve may not be taught in the prior art, plaintiffs concede that a workman of ordinary skill in the art with the wax ring gasket and the prior patents of Auer, Douglas and LeTarte might broadly conceive the combination of a wax ring gasket and a sleeve. The District Judge accepted this concession, pointing out that such a combination generally is suggested by the prior art. In our opinion, this is the turning point in the case. However, the District Judge agreed with plaintiffs' contention that the precise combination

of the Thies invention would not have been obvious to a mechanic of ordinary skill in the art at the time the invention was made. He held that the prior art patents did not suggest or foreshadow "the unique unitary structure of the patent in suit," and that the means adopted by Thies, by which the wax ring gasket could be usefully combined with a sleeve, included the novel experiment of an annular slot in the inner surface of the ring into which was embedded the flanged upper end of the sleeve. He was of the opinion that at the time the invention was made the unique arrangement of the unitary patented structure would not have been obvious to a mechanic of ordinary skill in the art.

■■ We do not concur in that conclusion. On the contrary, we are of the opinion that the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains, and that, accordingly, the Thies patent is invalid. Section 103, Title 35 United States Code. Whether that impalpable something which distinguishes invention from mere mechanical skill exists is a question often difficult to determine and which cannot be answered by applying the test of any general definition. McClain v. Ortmayer, 141 U.S. 419, 427, 12 S.Ct. 76, 35 L.Ed. 800. In our opinion, it does not exist in the present case. Westinghouse Elec. & Mfg. Co. v. Powerlite Switch Co., 142 F.2d 965, C.A.6th; Perfect Circle Co. v. Hastings Mfg. Co., 88 F.2d 813, C.A.6th; Application of Holslag, 148 F.2d 1007, C.C.P.A.; American Steel & Wire Co. of N. J. v. Coe, 70 App.D.C. 138, 105 F.2d 17, 19; L. M. Leathers' Sons v. Goldman, 252 F.2d 188, C.A.6th.

■ We are also of the opinion that the Thies patent should not have been granted under the ruling of the Supreme Court in Lincoln Engineering Co. of Ill. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008; and

Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151–152, 71 S.Ct. 127, 95 L.Ed. 162. It was there stated: "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." The concert of known elements must contribute something. It is only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. It is not sufficient that the combination be superior to what went before in producing a more convenient and economical mechanism or it may have filled a long-felt want. These advantages are not enough to meet the constitutional test of invention. General Motors Corp. v. Estate Stove Co., supra, 201 F.2d 645, 659, on rehearing, 203 F.2d 912, 917–918, C.A.6th, cert. denied, 346 U.S. 822, 74 S.Ct. .37, 98 L.Ed. 348; Bede v. Baker & English, 274 F.2d 833, 839–840, C.A.6th. Plaintiffs' expert witness Ehrman testified that he had never used a sleeve gasket on a long horn bowl; that the long horn bowl extended down into the lead far enough to give the margin of safety which was not given by the short horn bowl; and that in effect the sleeve extended the short horn bowl and made a short horn bowl a long horn bowl. The combination of the two elements, though novel and useful in meeting a problem, does not in our opinion perform any additional or different function in the combination than they perform out of it. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U. S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334.

■ Appellants urge upon us the remarkable commercial success achieved by the patented article. Production jumped from 7,484 in 1954, the first year the article was on the market, to 327,868 in 1960, with the expenditure of approxi-

mately only $5,000.00 in advertising. Commercial success is a factor to be considered in a doubtful case. Temco Electric Motor Co. v. Apco Manufacturing Co., 275 U.S. 319, 324, 48 S.Ct. 170, 72 L.Ed. 298. But it is not decisive, and commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162; L. M. Leathers' Sons v. Goldman, supra, 252 F.2d 188, 191, C.A.6th.

We hold the patent invalid for lack of invention.

This ruling makes it unnecessary to pass on the question of infringement, but in order to make a complete disposition of the issues presented without unduly lengthening this opinion, we also hold, for the reasons given by the District Judge, that if the Thies patent is valid, it is infringed by the accused device.

The judgment is reversed and the action is remanded to the District Court for further proceedings consistent with the views expressed herein.