Bruce GILREATH, C. J. Ver Halen, Jr., Ted Prutsman Manufacturing Company, Inc., Ted Prutsman Defrosto Mirrors, Inc. and Lansing Company, Plaintiffs,

v.

Theodore L. BEACH, d.b.a. Beach Manufacturing Company, Defendant.

Civ. A. No. 2370.

United States District Court
S. D. Ohio, W. D.

Jan. 9, 1964.

Kendrick, Schramm & Stolzy, Los Angeles, Cal., and Marechal, Biebel, French & Bugg, Dayton, Ohio, for plaintiff.

Irvin Gleim, Dayton, Ohio, for defendant.

WEINMAN, Chief Judge.

This action was commenced by plaintiffs Bruce Gilreath and C. J. Ver Halen by a complaint filed June 29, 1959 against Theodore L. Beach, d. b. a. Beach Manufacturing Co. Subsequent to the filing of the complaint, the following were added as parties plaintiff: Ted Prutsman Manufacturing Company, Inc., Ted Prutsman Defrosto Mirrors, Inc. and Lansing Company. After a series of assignments, Lansing Company became the owner of the entire legal and equitable title of the patents in suit, having the right to sue for past infringement and any unfair competition.[1]

The complaint contains three counts. Count 1 alleges that the activities of the defendant in manufacturing and selling

---

1. Notwithstanding the fact that plaintiff Lansing Company is presently the owner of the entire legal and equitable title of the patents in suit, the Court will refer to these patents as "plaintiffs' patents" since each plaintiff is a proper party to this action and each has had an interest in the patents.

rear view mirror assemblies constitute unfair competition with plaintiffs; count 2 alleges that the activities of the defendant in manufacturing and selling brackets for mounting rear view mirror assemblies constitute unfair competition; and count 3 alleges that defendant is infringing upon the plaintiffs' patents, being United States Letters Patent Nos. 2,585,273 and 2,708,086. Patent 2,585,-273 is a patent issued to Paul E. Prutzman on a rear view mirror assembly and contains six claims, each of which is charged to be infringed. Patent 2,708,-086 is a patent issued to Paul E. Prutzman on an adjustable rear view mirror mount or bracket and contains twelve claims. Claims 1 through 5 are charged to be infringed; claims 6 through 12, which are not practiced by plaintiffs, are not charged to be infringed.

By its answer filed November 24, 1961, defendant denies the claims of unfair competition, denies infringement of the patents in suit and attacks the validity of those two patents. A counterclaim filed by defendant on the same date has been abandoned.

More specifically, it is defendant's contention that every essential element of claim 1 of Patent 2,585,273 was embodied in a rear view mirror assembly manufactured by William E. Jacobs and was in public use and on sale in this country for more than one year prior to the date of the application for the patent by Paul E. Prutzman; and accordingly, claim 1 of the patent would be invalid under § 102 (b), Title 35 U.S.C.A. The defendant further contends that claims 2 through 6 of the mirror patent are invalid since they are modifications dependent upon claim 1 and these modifications would have been obvious to a person skilled in the art to which the subject matter pertains, § 103, Title 35 U.S.C.A.

The defendant further argues that his rear view mirror assembly is based upon his own patent, United States Letters Patent 2,851,926, and the issuance of that patent raises a presumption against its infringement of plaintiffs' Patent 2,585,-273.

As to plaintiffs' Patent 2,708,086, the defendant contends that every essential element of claims 1 through 5 was embodied in an adjustable rear view mirror bracket manufactured by William E. Jacobs and that bracket was in public use and on sale in this country for more than one year prior to the date of the application for the patent by Paul E. Prutzman; and accordingly, claims 1 through 5 are invalid under § 102(b), Title 35 U.S.C.A. The defendant also contends that claims 1 through 5 define a bracket structure which was described and widely disseminated in printed publications at least more than one year prior to the filing date of the application for the patent, and for this additional reason these claims are invalid under § 102(b), Title 35 U.S.C.A. The defendant further contends that claims 6 through 12, which are not practiced by plaintiffs, contain modifications which would have been obvious to a person skilled in the art and are therefore invalid, § 103, Title 35 U.S.C.A.

In its findings of fact, after certain jurisdictional and general findings, the Court deems it advisable to consider first count 3 of the amended complaint: patent infringement. Each patent in suit will be considered separately. Thereafter, the Court will consider jointly counts 1 and 2: the allegations of unfair competition.

## FINDINGS OF FACT

1. This action was commenced by plaintiffs Bruce Gilreath and C. J. Ver Halen, Jr., by a complaint filed June 29, 1959. Each of these plaintiffs is a citizen of the State of California. Defendant Theodore L. Beach is a citizen of the State of Ohio.

2. On November 13, 1961, plaintiffs Ted Prutsman Manufacturing Company, Inc. and Ted Prutsman Defrosto Mirrors, Inc. were added as parties plaintiff. Plaintiffs Ted Prutsman Manufacturing Company, Inc. and Ted Prutsman Defrosto Mirrors, Inc., are each corporations incorporated under the laws of the State of California.

It should be noted that the Court, in its order of November 13, 1961, stated that plaintiffs' motion to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure was not the proper procedure to follow in adding parties plaintiff; a motion to add parties under Rule 21 being the proper procedure.

3. On September 12, 1962, the Court granted plaintiffs' motion, which was unopposed by defendant, to add Lansing Company as a party plaintiff. Plaintiff Lansing Company is a corporation incorporated under the laws of the State of Michigan.

4. As a result of a series of agreements, infra (a)-(e), Lansing Company became the owner of the entire legal and equitable title of the patents in suit, having the right to sue for past infringement and any unfair competition. Several of the following agreements are confusing and superfluous; however, the end result is entire legal and equitable title in Lansing Company.

a. On May 8, 1959, Paul E. Prutzman transferred his entire interest in the patents in suit, including the right to sue for past infringement, to plaintiffs Bruce Gilreath and C. J. Ver Halen, Jr. (Defendant's Exhibit XXI.)

b. On May 18, 1960, Paul E. Prutzman transferred such interest as he had to C. J. Ver Halen, Jr. (Plaintiffs' Exhibits 8 and 9; identical to Defendant's Exhibits XVII and XIX, respectively.)

c. On December 19, 1960, which is subsequent to the filing of the complaint, plaintiffs Bruce Gilreath, C. J. Ver Halen, Jr., Ted Prutsman Manufacturing Company and Ted Prutsman Defrosto Mirrors, Inc., executed an agreement whereby they transferred their entire interest in the patents in suit, including the right to bring suit thereon and control the conduct of the litigation, to plaintiff Lansing Company. (Plaintiffs' Exhibit 41.)

d. On November 8, 1961, plaintiff C. J. Ver Halen, Jr., transferred his interest in the patents in suit to Lansing Company. (Plaintiffs' Exhibit 10; identical to Defendant's Exhibit XVIII).

e. In March, 1963, which is subsequent to the filing of the complaint, plaintiff Bruce Gilreath assigned such interest as he had in the patents in suit to plaintiff C. J. Ver Halen, Jr.

RE: INFRINGEMENT OF UNITED STATES LETTERS PATENT 2,-585,273

5. On January 26, 1950, Paul E. Prutzman filed an application for patent on a rear view mirror assembly. On February 12, 1952, the patent was issued as United States Letters Patent 2,585,273. (Plaintiffs' Exhibit 1). The patent contains 6 claims, each of which plaintiffs allege is being infringed by defendant.

6. In the patent, as issued, the inventor states that the invention relates to a mirror and retaining case adapted to be mounted at the side of an automotive vehicle to enable the driver to view a part of the road to the rear of the vehicle. He further sets forth seven purposes of the invention. These purposes, and here the Court summarizes the more important purposes, are to provide a rear view mirror assembly which: may be firmly retained in a position to afford maximum road visibility; offers the minimum wind resistance consistent with its area; has a rigidly backed mirror, so as to protect it against extreme vibration, the mirror being readily removed for replacement and, when necessary, may be heated and then maintained at a temperature at which obscuration by dew, fog or snow are avoided.

7. Claim 1 of the patent relates to a rear view mirror assembly consisting essentially of an elongated, trough-shaped casing member having end plates. The casing member is generally curvilinear in cross-section and there are internal, mirror-supporting projections from the casing and end members with a mirror resting on the projections and spaced thereby from the bottom of the trough. There is a retaining ring of L-section which covers the rim of the mirror and overlaps

the adjacent edges of the trough. The ring is attached to the trough by screws passed through the mating portions of the ring and trough in planes parallel to the plane of the mirror.

8. Claims 2 through 5 are dependent upon claim 1 and are modifications of that claim. Claim 2 discloses a modification relating to threaded elements projected from the end plates to provide a swivel support for the assembly and lock nuts on the threaded elements for locking the assembly to a supporting bracket in a preferred angular position. Claims 3 and 4 are modifications of claim 1 and relate to an internally disposed means of heating the mirror. However, plaintiffs do not contend that defendant has manufactured an internally disposed means of heating the mirror of his rear view mirror assembly. Under claim 5, the trough-shaped member has a section in the form of half of an octagonal figure.

9. Claim 6 is similar to claim 1 and relates to a mounting for a rear view mirror with a rigid metallic trough having internal projections parallel to its edges against which the mirror may rest. The projections are arranged to space the mirror from the bottom of the trough and there are heads closing the ends of the trough. The most important feature of the claim relates to a means for non-leakably clamping the mirror in position on the projections. There are also threaded elements provided with lock nuts and projected from the heads of the mounting for the attachment thereof to a supporting bracket in a substantially vertical position.

10. William E. Jacobs manufactured rear view mirror assemblies for trucks from the latter part of 1948, or the beginning of 1949, until November of 1950.

11. The Jacobs rear view mirror assembly consists essentially of an elongated, wedge-shaped or pie-shaped, as Mr. Jacobs referred to it, casing member with internal, mirror supporting projections from the casing and end members with the mirror resting on the projections and thereby spaced from the bottom of the casing member. Because of the wedge-shape of the casing member, the mirror is closer to the bottom of the casing member on one side than on the opposite side. A retaining ring of L-section covers the rim of the mirror and overlaps the adjacent edges of the casing member. The ring is attached to the casing member by screws passed through the mating portions of the ring and the casing member. Threaded elements project from the end plates to provide a swivel support for the assembly and there are lock nuts on the threaded elements for locking the assembly to a supporting bracket. (Defendant's Exhibits V, VI, VIII and IX.)

12. An examination of the claims of Patent 2,585,273, and the Prutzman mirror assembly itself (Plaintiffs' Exhibit 11), and the Jacobs mirror assembly shows that each mirror assembly is composed of an elongated mirror; an elongated casing member with internal, mirror supporting projections which space the mirror from the bottom of the casing member; a retaining ring of L-section covering the rim of the mirror and overlapping the edges of the casing member with the ring being attached to the casing member by screws passed through the mating portion of the retaining ring and casing member. The major differences between the claims of the Prutzman mirror assembly and the Jacobs mirror assembly are that the former has a trough-shaped casing member whereas the latter has a wedge-shaped casing member and, because of the different shapes of the casing members, the mirrors are at different distances from the bottom of their respective casing members.

As to the different shapes of the casing members, there is nothing inventive or patentable in the shape of the Prutzman casing member. And as to the differing distances of the mirrors from the bottom of their respective casing members, the Court is aware of the advantages of spacing the mirror from the bottom of a casing member, viz., preventing fogging and reducing vibration, but finds nothing inventive or patentable in the manner in which it is done in the Prutzman mirror

assembly over the manner in which it had previously been accomplished in the Jacobs mirror assembly.

13. Each element of the Prutzman mirror assembly patent has its counterpart in the Jacobs mirror assembly where each does substantially the same work in substantially the same way.

14. The similarity between the Prutzman mirror assembly and the Jacobs mirror assembly is no mere coincidence as both Paul E. Prutzman and his brother Ted Prutsman [2] knew and dealt with Mr. Jacobs. In fact, Ted Prutsman had at one time worked with Jacobs driving a truck. The following facts will illustrate the knowledge which Paul E. Prutzman had regarding the Jacobs mirror assembly and bracket when he applied for his patents, now the patents in suit.

In 1949 and 1950, Jacobs manufactured and sold mirror assemblies and brackets to Ted Prutsman, who in turn resold them. However, Jacobs was unable to manufacture a sufficient supply for Ted Prutsman so he told Ted Prutsman to manufacture the brackets and he would furnish the mirror assemblies.

In 1949, Jacobs applied for a patent on his mirror assembly and a hinged bracket. Shortly thereafter, both Ted Prutsman and Paul E. Prutzman came to his home and wanted him to allow them to manufacture the mirror assemblies and brackets. Jacobs advised them that he had applied for the patents, but he had not yet received them. Subsequently, each of the applications was denied.

In the first part of 1950, Jacobs terminated his dealings with Ted Prutsman because he felt that it was no longer profitable to continue.

15. The defendant has proved by the required degree of proof that claim 1 of the Prutzman mirror assembly patent lacks invention.

16. The defendant has proved by the required degree of proof that claim 1 of the Prutzman mirror assembly patent is anticipated by the Jacobs mirror assembly and therefore lacks novelty.

17. Claims 2 through 5, being dependent upon claim 1 and there having been no showing that any of the modifications contained therein were patentable in and of themselves, lack invention and further are anticipated by the Jacobs mirror assembly and therefore lack novelty.

18. The defendant has proved by the required degree of proof that claim 6 lacks invention and further is anticipated by the Jacobs mirror assembly and therefore lacks novelty. The means for non-leakably clamping the mirror in position lacks invention; it would have been obvious to a person skilled in the art.

RE: INFRINGEMENT OF UNITED STATES LETTERS PATENT 2,708,086

19. On January 12, 1952, Paul E. Prutzman filed an application for patent on a bracket for mounting rear view mirrors. On May 10, 1955 the patent was issued as United States Letters Patent 2,708,086. (Plaintiffs' Exhibit 2.) The patent contains twelve claims. Claims 1 through 5 are charged to be infringed; claims 6 through 12, which are not practiced by plaintiff, are not charged to be infringed.

20. In the patent, as issued, the inventor states that the invention relates to a bracket adapted to be attached to the cab of an automotive truck and to support a mirror or mirrors in such a position that the driver may view the road to the side and rear of the vehicle. He further sets forth eight purposes of the invention. These purposes, and here the Court summarizes the more important purposes, are to provide a bracket for mounting rear view mirrors which: is stiff and free from tendency to vibrate; is capable of adjustment as to extent of projection; allows a single mirror to be mounted and adjusted to the desired angle; and is automatically col-

2. Although they are brothers, Paul E. Prutzman and Ted Prutsman spell their last names differently.

lapsible so as to retract to clear an obstacle without damage to mirror, bracket or wall of the vehicle.

21. Claim 1 of the patent relates to an adjustable rear view mirror mount for installation on the side of the cab of a motor truck and is comprised of a pair of upper and lower extension members, each adapted to one end for attachment to the cab. There is a corresponding pair of brace members, each connected at its outer end to the outer end portion of the corresponding extension member and adapted at its inner end for attachment to the cab laterally at the point of attachment of the corresponding extension member. There is a frame pivotally connected to the outer ends of the two extension members to swing about an upright axis relative to the extension members and two vertically spaced pivot means on the frame to support a mirror rearward thereof at an adjustable angle.

22. Claims 2 through 4 are dependent upon claim 1 and are modifications of that claim. Claim 2 relates to a bracket as set forth in claim 1 in which at least one of the vertically spaced means is adjustable relative to the frame to vary the inclination of the mirror forward or rearward with respect to the frame.

23. Claim 3 relates to a bracket as set forth in claim 2 in which the frame is connected to the extension members by pivot means at the inner edge of the frame to permit the frame to respond to collision with obstacles by swinging bodily to a position completely rearward of the extension member.

24. Claim 4 relates to a bracket as set forth in claim 1 and includes a pair of base straps connected both with the ends of the corresponding extension members and with the ends of the corresponding brace members to adapt the members for attachment to the cab.

25. Claim 5 is similar to claim 1 and discloses pivot means for supporting the mirror on the frame with the frame serving as a guard to protect the mirror against impact with obstacles in its path.

26. Claims 6 through 12 are all similar to claim 1 and are modifications of that claim.

27. William E. Jacobs first manufactured brackets for mounting rear view mirrors in the latter part of 1948 or the beginning of 1949. These first brackets were solid, i. e., they were not hinged and therefore would not automatically collapse upon impact with an obstacle. However, later in 1949, Jacobs began manufacturing hinged brackets. This was after Ted Prutsman had advised him that the Lindsay Olive Company was manufacturing such a bracket.

28. The Jacobs bracket for mounting rear view mirrors is composed of a pair of upper and lower extension members, each adapted at one end for attachment to the cab of a motor truck. There is a corresponding pair of brace members, each connected at its outer end to the outer end portion of the corresponding extension member and adapted at its inner end for attachment to the cab. There is a frame pivotally connected to the outer ends of the two extension members so as to swing about an upright axis. The pivotally mounted frame has vertically spaced pivot means to support a mirror assembly. (Defendant's Exhibits I, III and IV and the deposition of William E. Jacobs.)

29. A comparison of the claims of the Prutzman Patent 2,708,086, and the bracket itself (Plaintiffs' Exhibits 14, 15, 16, 17, 18 and 20), and the Jacobs bracket shows that each is composed of a pair of upper and lower extension members, each adapted at one end for attachment to the cab; each has a pair of brace members similarly connected at their outer end and similarly adapted at their inner end for attachment to the cab; and each has a frame pivotally connected to the outer ends of the two extension members so as to swing about an upright axis.

30. Each element of the Prutzman bracket patent has its counterpart in the Jacobs bracket where each does substantially the same work in substantially

the same way. It is true, as stated by counsel for plaintiffs, that the defendant's exhibits do not include the hardware used to attach the bracket to the cab. However, Mr. Jacobs testified as to the hardware used and the Court considers the present lack of this hardware to be inconsequential.

31. The statements regarding the reasons for the similarity between the Prutzman mirror assembly and the Jacobs mirror assembly, contained in Finding of Fact 14, are equally applicable to the brackets in question and are incorporated by reference herein.

32. The defendant has proved by the required degree of proof that claim 1 of the Prutzman bracket patent lacks invention.

33. The defendant has proved by the required degree of proof that claim 1 of the Prutzman bracket patent is anticipated by the Jacobs bracket and therefore lacks novelty.

34. An examination of Defendant's Exhibit XXXV, an advertisement appearing in the publication Western Transport in October of 1950 and Defendant's Exhibits XXXIII and XXXIV, catalogue sheets of October 10, 1950, reveals that the brackets therein shown are solid, without hinges. However, there was no novelty or invention in the placing of the hinges on the brackets because that had been done by Jacobs and the Lindsay Olive Company. And even if the hinges used by Prutzman were different than those used in the prior art, such modification would have been obvious to persons skilled in the art. Therefore, the defendant has proved by the required degree of proof that the invention claimed in the Prutzman bracket patent was described in a printed publication and was on sale more than one year prior to the date of the application for patent.

35. The defendant has proved by the required degree of proof that claims 2 through 4, being dependent upon claim 1 and there having been no showing that any of the modifications contained therein were patentable in and of themselves, lack patentability for the same reasons that claim 1 lacks patentability, viz., lack of invention; lack of novelty, because of anticipation by the Jacobs bracket; and because the patent was described in a printed publication and was on sale more than one year prior to the date of the application for patent.

36. The defendant has proved by the required degree of proof that claim 5, being similar to claim 1 and lacking any further patentable feature, lacks patentability for the same reasons as claim 1.

37. The defendant has proved by the required degree of proof that claims 6 through 12, being similar to claim 1 and lacking any further patentable features, lack patentability for the same reasons as claim 1.

RE: THE BEACH REAR VIEW
MIRROR ASSEMBLY
PATENT

Plaintiffs have not contested the validity of this patent but it appears to the Court that defendant has placed its validity into issue and, in the interest of justice, the Court must examine the patent.

37. On April 16, 1956, Theodore L. Beach, filed an application for patent on a rear view mirror assembly. On September 16, 1958, the patent was issued as United States Letters Patent 2,851,926. (Defendant's Exhibit XXXII.) The patent contains 5 claims.

38. In the patent, as issued, the inventor states that the invention relates to mirror mounts and is particularly concerned with rear view mirrors for motor vehicles. He further sets forth five purposes of the invention. These purposes are similar to those stated by Paul E. Prutzman in Patent 2,585,273. The major difference is that the Beach mirror assembly is adapted to retain the mirror glass releasably; the mirror glass being retained without the inclusion of rubber components or similar molded compositions.

39. The fact that the Beach patent closely resembles the Prutzman mirror

assembly is simply understood since the evidence shows that Beach examined the Prutzman mirror assembly and indicated that he intended to copy it.

40. As previously stated, there are five claims in this patent. A review of each claim discloses that there are but two features of the patent which may be argued to be patentable over the prior art. The first is the use of spring arms as a means of securing the mirror (instead of internal, mirror supporting projections); the second is the employment of a slot in the lower end of the casing through which the mirror glass is inserted and through which air passes. It is asserted that the temperature on both sides of the mirror are therefore the same and fogging of the mirror glass is prevented. The Court finds that neither of the foregoing, nor their combination, represents an invention over the prior art.

41. Each claim of the Beach patent is anticipated by both the Jacobs mirror and the Prutzman mirror and therefore lacks novelty; each claim further lacks invention. Any changes made by defendant in his mirror patent would have been obvious to one skilled in the art. Defendant may have made a better mirror assembly than those disclosed in the prior art, but there is no invention.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and of the parties to this action. § 1338(a) and (b), Title 28, U.S.C.A.

2. The plaintiffs' patents are presumed to be valid and the burden of establishing invalidity is on the defendant. § 282, Title 35, U.S.C.A. and Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937).

3. The presumption of validity is not conclusive and may be overcome by evidence demonstrating error in the Patent Office's determination. Harvey v. Levine, 322 F.2d 481, 484 (C.A.6 1963).

4. The burden of proof upon the party asserting the invalidity of a patent is proof which is clear and satisfactory; it must be proof which will convince the Court beyond a reasonable doubt. Cutting Room Appliances Corp. v. Weatherbee Coats, Inc., 158 F.Supp. 231, 233 (D.C.N.D.Ohio 1950), affirmed, 6 Cir., 250 F.2d 39 (C.A.6 1957) and Mumm v. Jacob E. Decker & Sons, supra, 301 U.S. at page 171, 57 S.Ct. 675, 81 L.Ed. 983.

5. There are three elements requisite to validity of a patent: novelty, utility and invention. Harvey v. Levine, supra, 322 F.2d at page 483; Maytag Company v. Murray Corporation of America, 318 F.2d 79, 81 (C.A.6 1963); Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911, 917 (C.A.6 1960), cert. denied 368 U.S. 890, 82 S.Ct. 139, 142, 7 L.Ed.2d 87 (1961); and Allied Wheel Products, Inc. v. Rude, 206 F.2d 752, 760 (C.A.6 1953).

6. In Allied Wheel Products v. Rude, supra, the Court stated at page 760 of 206 F.2d:

"Anticipation belongs in the field of novelty. To anticipate an invention is to negative novelty * * *. In order to anticipate an invention, it is necessary that all the elements of the invention or their equivalents be found in one single description or structure, where they do substantially the same work in substantially the same way."

7. In Aluminum Company of America v. Sperry Products, Inc., supra, the Court quoted at page 917 of 285 F.2d from Ohmer Fare Register Co. v. Ohmer, 238 F. 182, 186–187 (C.C.A.6 1916) as follows:

" ' * * * we are considering the scope of invention * * * and in such inquiry the question is one of fact, taking into account the entire prior art, whether the advance made in the given case amounts to invention or only mechanical skill. * * * All elements of the prior art have a bearing upon the question of invention; it being unnecessary to a finding of lack of invention that

every element be found in one embodiment.'"

8. Portions of several statutes are especially relevant to this case and they are hereinafter quoted:

Section 102, Title 35 U.S.C.A. provides:

"A person shall be entitled to a patent unless—

"* * * *

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *."

Section 103, Title 35 U.S.C.A. provides:

"A patent may not be .obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

9. Applying the applicable law to the facts as hereinbefore found, the Court concludes that claims 1 through 6 of United States Letters Patent 2,585,273 and claims 1 through 12 of United States Letters Patent 2,708,086 are invalid. Accordingly, plaintiffs are not entitled to recover on count 3 of their amended complaint.

10. To meet the test of invention, it is not sufficient that a combination of elements is superior to the prior art and thereby produces a better mechanism. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Harvey v. Levine, supra, 322 F.2d at page 485; and General Motors Corp. v. Estate Stove Co., 201 F.2d 645, 659 (C.A.6 1953), on rehearing 203 F.2d 912, 917–918 (1953),

cert. denied, 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 348 (1953).

11. Applying the applicable law to the facts as hereinbefore found, the Court concludes that claims 1 through 5 of United States Letters Patent 2,851,926 are invalid.

12. One of the leading cases in the field of unfair competition is a decision of the Court of Appeals for the Sixth Circuit, West Point Manufacturing Company v. Detroit Stamping Company, 222 F.2d 581 (1955), cert. denied, 350 U.S. 840, 76 S.Ct. 80, 100 L.Ed. 749 (1955). That case contains an extensive review of the law of unfair competition and this Court applied the law as therein stated.

13. Applying the applicable law to the facts as hereinbefore found, the Court concludes that plaintiffs, having failed to prove the allegations of unfair competition as to either their mirror assembly or their bracket assembly, are not entitled to recover on either count 1 or count 2 of their amended complaint.

## JUDGMENT

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered, adjudged and decreed:

That the amended complaint is dismissed and judgment thereon is hereby entered in favor of defendant and against plaintiffs Bruce Gilreath, C. J. Ver Halen, Jr., Ted Prutsman Manufacturing Company, Inc. Ted Prutsman Defrosto Mirrors, Inc. and Lansing Company;

That the counterclaim is dismissed;

That claims 1 through 6 of United States Letters Patent 2,585,273 are invalid;

That claims 1 through 12 of United States Letters Patent 2,708,086 are invalid; and

That claims 1 through 5 of United States Letters Patent 2,851,926 are invalid.

The Clerk shall forthwith enter judgment as herein provided; no entry of counsel required.